UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NATS, INC. | : |
| | : |
|     PLAINTIFF, | : |
| | : |
| v. | : |
| | : |
| RADIATION SHIELD TECHNOLOGIES, INC., DANIEL EDWARD, AND RONALD DEMEO, | : |
| | : |
|     DEFENDANTS. | :    MARCH 29, 2021 |

## COMPLAINT

Plaintiff NATS, Inc. ("NATS"), by its attorneys, and in support of its claims against defendants Radiation Shield Technologies, Inc. ("RST"), Daniel Edward ("Edward"), and Ronald DeMeo ("DeMeo," and collectively with RST and Edward the "Defendants"), respectfully makes the following allegations:

## INTRODUCTION

1. This lawsuit involves a fraudulent scheme perpetrated by Defendants Radiation Shield Technologies, Inc. and Daniel Edward, RST's purported Director of Sales & Business Development, acting at the sole direction of RST's Chief Executive Officer, Ronald DeMeo, against NATS, an unsuspecting victim out over $300,000 with absolutely nothing to show for it.

2. RST lured NATS with promises that it would deliver top of the line radiation hazmat suits within short timeframes to meet NATS' end customer's requirements. RST would not accept the order, however, without NATS making a substantial advanced payment. DeMeo established RST's advanced payment policy, and it was strictly enforced by Edward. The reason for DeMeo's "no advanced payment, no suits" policy was only made clear to NATS, in retrospect, when it received no suits despite making the payment.

3. Specifically, NATS ordered nearly a million dollars of hazmat suits from RST for ultimate delivery to the Government of Saudi Arabia. DeMeo demanded that NATS pay 35% of the order price in advance to secure delivery within four months of receipt of the down payment. NATS reluctantly acceded to DeMeo's demand and made the payment to RST. RST did not deliver the suits within the four (4) month timeframe promised and proceeded to deceive NATS further with false statements made by Edward regarding the reasons for RST's delay, falsely blaming the ongoing COVID-19 pandemic for RST's inability to complete the order. Over a year later, NATS has no prospect of receiving the originally ordered suits from RST.

4. As a result, NATS brings claims against Defendants for breach of contract, fraud, veil piercing, and a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110 *et seq*. NATS is entitled to relief in the form of monetary damages, including cover damages, compensatory damages, punitive damages, attorneys' fees, interest, and costs.

## PARTIES

5. Plaintiff NATS is a Connecticut corporation with a principal place of business in Middletown, Connecticut.

6. Defendant Radiation Shield Technologies, Inc. is a Delaware corporation with principal place of business in Coral Gables, Florida.

7. Defendant Ronald DeMeo is a citizen of Florida.

8. Defendant Daniel Edward is a citizen of Florida.

## JURISDICTION AND VENUE

9. Subject matter jurisdiction exists in this Court based on complete diversity of citizenship between the parties and because the value of the rights of NATS implicated by the

conduct alleged herein and the actual and potential loss to NATS as a result of the Defendants' unlawful conduct exceeds $75,000 pursuant to 28 U.S.C. § 1332.

      10.     This Court has personal jurisdiction over RST pursuant to Conn. Gen. Stat. § 33-929(f)(1) because NATS has its usual place of business in this state and because this case arises out of a contract made in this state or to be performed in this state. The facts alleged below establish that NATS accepted RST's offer by issuing a purchase order from Connecticut for 1500 hazmat suits and, thus, made the contract here in Connecticut. NATS has also performed its obligations under the contract here in Connecticut by making an advanced payment of over $300,000 for the hazmat suits. This Court also has personal jurisdiction over RST pursuant to Conn. Gen. Stat. § 33-929(f)(4) because NATS' claims arise out of tortious conduct in this state. RST sent multiple emails to NATS in Connecticut containing fraudulent statements regarding its ability to deliver 1500 hazmat suits to induce NATS into issuing the order and to make a substantial down payment on the order in Connecticut. RST made further fraudulent statements directed towards NATS in Connecticut containing false representations regarding the reason for its delay and its continued ability to perform the order causing further delay and injury to NATS. This court has personal jurisdiction over Edward pursuant to §52-59b because he was the sender of multiple emails to NATS in Connecticut containing fraudulent statements regarding the reason for RST's delay and causing injury to NATS. This court has personal jurisdiction over DeMeo pursuant to §52-59b because, as described below, he is the alter ego of RST responsible for and directing the acts giving rise to personal jurisdiction over RST. All of the Defendants committed unfair trade practices in this state by deceiving NATS into making a substantial advanced payment, making numerous false statements regarding RST's performance of the order, and wrongfully withholding NATS' advanced payment.

11. Pursuant to 28 U.S.C. § 1391, venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims occurred in Connecticut and because the Defendants are subject to personal jurisdiction in Connecticut.

## FACTUAL BACKGROUND

### The Parties

12. NATS is a small business primarily involved in facilitating the export of equipment manufactured in the United States. NATS specializes in distributing advanced technological innovations in radiation detection and analysis systems. NATS offers systems for users in Nuclear Power Plants, Homeland Security Agencies, Customs and Border Patrol, National Atomic Energy Agencies, Nuclear Regulatory Agencies, Hospitals, and in Research Establishments worldwide. Some of the equipment NATS distributes includes stack monitoring, radiation access control systems, early warning systems, water monitoring systems, radiation spectroscopy, and advanced imaging systems. In the last 15 years, NATS has exported over $40 million dollars worth of high-end manufactured products from Connecticut and other United States sources to international markets.

13. In or around October 2019, NATS received a purchase order from its distributer and partner in Saudi Arabia for 1500 protective hazmat suits for delivery to the Government of Saudi Arabia, Ministry of Interior, Directorate of Saudi Civil Defense, with a tight delivery schedule requiring delivery of all suits by the end of the first quarter of 2020. The order had a 10% penalty for late delivery.

14. NATS does not manufacture hazmat suits, but assists foreign distributors and end users with the purchase of United States manufactured goods by identifying sources, issuing

orders, assisting with the freight forwarding to its final destination, and making necessary payments.

15. NATS identified RST as a source for the hazmat suits needed to fulfill the Government of Saudi Arabia's order through its website.

16. RST purports to be a manufacturer of radiation hazmat suits used by first responders, and touts on its website that it is a "world leader in the research, design and production of personal protection systems for ionizing and nuclear radiation."

17. DeMeo is RST's CEO. According the Florida Secretary of State Corporate filings, during registration, DeMeo also identified himself as the President and Secretary of RST. In light of these filings, DeMeo is believed to be the sole shareholder of RST.

18. RST is not the only company in DeMeo's web of corporate aliases. The following companies, all run by DeMeo, have the same principal address and/or mailing address as RST: (1) Hirt Fitness, INC; (2) RD Atlantic Holdings, LLC; (3) Eastern Corporate Events, LLC; (4) Radguard, Inc.; (4) Lone Star Transportation and Courier, Inc.; (5) Meridian Research and Developments, Inc.; (6) Meridian Pain & Diagnostics, Inc.; (7) Surfside Anesthesia Services, Inc.; (8) The Bath Club V6, Inc.; (9) The Meridian Organization, Inc.; and (10) The Workers Pharmacy, LLC.

19. The lines between these companies is blurry. For example, on the website for "Meridian Spinal Therapeutics," DeMeo also promotes his Demron radiation hazmat suits purportedly produced by RST.[1] The reason for the overlap is obvious: they are all DeMeo.[2]

---

[1] Meridian Spine Therapuetics, Demron, (lhttps://www.meridianspine.com/demron/)
[2] See, e.g., Ronald Freeman DeMeo, MD (https://www.meridianspine.com/doctors/ronald-freeman-demeo-md/); CEO, FOUNDER DR. RONALD DEMEO (https://radshield.com/ceo/)

20. Edward purports to be RST's Director of Sales & Business Development. Edward was the primary contact between RST (i.e., DeMeo) and NATS.

**DeMeo Demands NATS' Money**

21. In or around November 2019, NATS reached out to RST with a request for quotation for the 1500 piece order for delivery in the first quarter of 2020.

22. Prior to placing and order, NATS requested and received a sample of a hazmat suit from RST and confirmed it would meet the Government of Saudi Arabia's standards.

23. RST responded to the quotation stating it could produce the 1500 piece order.

24. After some price negotiations, on or about November 20, 2019, NATS sent a purchase order to RST with the agreed to price. The agreed to value of the order was $954,650.

25. RST rejected the Order at the insistence of DeMeo for two reasons. First, DeMeo instructed RST it was unable to accept payment terms of net 30-days from shipment for such a large order and DeMeo requested payment of fifty percent (50%) of the order value in advance of shipment and fifty percent (50%) when the suits shipped. Second, RST stated that it could only ship the suits 120 day from receipt of the advanced payment.

26. NATS was reluctant to make such a substantial advanced payment before RST rendered any performance. NATS counteroffered with a guaranteed letter of credit that would provide full payment of the order upon shipment. By that overture, NATS provided RST assurance that it intended to make payment provided RST performed. RST rejected that offer at DeMeo's insistence and reverted to DeMeo's original demand for an advanced payment.

27. Ultimately, DeMeo demanded and NATS agreed to make an advanced payment of thirty-five (35%) of the Order value with payment of the remaining sixty-five (65%) due net 30-days from shipment.

28. On or about November 27, 2019, NATS issued purchase order number SA-909103B memorializing the parties' agreement (the "Order"). The Order also placed RST on notice of the ten (10%) penalty in NATS' contract with the Government of Saudi Arabia. A copy of the Order is Exhibit A to this Complaint.

29. On or about December 16, 2019, RST sent an acknowledgment of the Order. A copy of RST's acknowledgment is Exhibit B to this Complaint. The acknowledgement confirms delivery 120 days from the receipt of the advanced payment.

30. RST agreed to start shipping suits at around 500 pieces a month starting in January 2020 and complete all shipments by or before April 2020.

**DeMeo Takes NATS' Money**

31. In December 2019 and January 2020, NATS made two payments by wire transfer totaling approximately $330,277.50 pursuant to its obligation under the Order to make a thirty-five (35%) advanced payment. DeMeo was the only person in RST that could confirm that NATS made the payment and instructed RST to withhold performance until the cash was in the bank.

**Defendants Deceive NATS**

32. During February through April 2020, NATS' distributor in Saudi Arabia requested information from RST regarding its progress on manufacturing the hazmat suits and the status of the deliveries expected each month under the Order. RST did not respond.

33. NATS then requested to visit RST's facility to view its progress on completing the Order. RST refused NATS' request without explanation. Upon information and belief, RST does not have a manufacturing facility in Florida and its offices are a doctor's office.

34. On March 23, 2020, Edward sent a letter to NATS' distributor in Saudi Arabia on RST's behalf stating, in substance, that, in light of the COVID-19 pandemic, the "US Government has enacted a mandatory shutdown of all non-essential businesses, which does include Radiation Shield Technologies." A copy of the letter is Exhibit C to this Complaint.

35. That representation was false when made and Edward knew it was false. The US Government did not enact a mandatory shutdown of all non-essential business that would affect RST's ability to perform the Order. Instead, RST made such statements to deceive NATS and its distributor about RST's non-performance.

36. Meanwhile, on or about April 3, 2020, RST issued a press release touting its new COVID-19 antiviral suits that are, ostensibly, the same hazmat suits that NATS ordered. Nowhere in the press release does RST state that those suits are in short supply.

37. By April 2020, NATS grew increasingly concerned that RST would not make the contractual deadline having not received a single suit under the Order.

38. In May 2020, after many calls and emails, including attempts to contact DeMeo, RST purported to provide a status of its completion of the Order.

39. Specifically, on or about May 4, 2020, NATS' distributor partner spoke with a representative from RST, who informed him that RST was finalizing the order. On May 5, 2020, Edward confirmed RST was "finalizing production" of the order, but stated it would not ship in a couple of days or couple of weeks.

40. Shortly thereafter, on May 8, 2020, Edward sent another email continuing to blame the delay on the "ongoing outbreak of Coronavirus 2019 (COVID-19)." Among the reasons listed included: "labor shortages due to quarantine," "material shortages," and "significant delays in lead times as a result of factory closings across the globe." RST also

explained that it "experienced a mandatory shut down for a period of time by the State of Florida." A copy of the email is Exhibit D to the Complaint.

41. Edward's representations regarding RST's ability to perform in his May 8, 2020 letter were false and he knew they were false. For example, pursuant to Florida Governor DeSantis's Executive Order 2020-91 "Manufacturer workers for health manufacturing ... personal protective equipment (PPE)" were deemed "essential services." In addition, "[w]orkers supporting the manufacturing of safety equipment and uniforms for law enforcement, public safety personnel, and first responder[s]" also perform "essential services." Manufacturers of hazmat suits meet those criteria. The Governor's "Safer At Home" Order within Executive Order 2020-91 did not apply to activities "necessary to obtain or provide essential services." Accordingly, there was no State issued shutdown.

42. Moreover, RST was supposed to have completed the order by April 2020. Shortages in labor and material due to the COVID-19 pandemic should have had no impact on its performance.

43. Additionally, Edward asserted that the May 8, 2020 email constituted notice of a "force majure/act of God" made "pursuant to the terms of [the parties'] contract."

44. The Order does not contain a force majure clause.

45. As the delays mounted, RST's performance became more concerning when, in June 2020, NATS received a hazmat suit from RST, under a separate order it placed for a test article, which differed dramatically from the sample that RST provided to NATS before issuing the Order. This test article did not meet the requirements established by the Government of Saudi Arabia and was of substantially degraded quality.

46. Facing increasing pressure from its end customer, throughout June and July 2020, NATS continued to request status from RST of its production of the hazmat suits.

47. In response, on or about July 20, 2020, Edward provided a letter to NATS and its distributor addressed to the Ministry of Interior, General Directorate of Civil Defense, stating the "delivery date has been set on September 30, 2020" for the "1,500 CBRN [s]uits delivery". A copy of the letter is Exhibit E to this Complaint.

48. Such statements were false and Edward knew they were false. RST did not intend to complete the Order by September 30, 2020, and Edward made those statements to induce NATS not to cancel the Order.

49. Edward reconfirmed the end of September delivery date in an email dated August 18, 2020 stating "We are still on track for end of September." Again, these statements were false and known to be false.

50. In or around September 2020, knowing the promised delivery date was approaching, NATS requested that RST provide shipping weights and box dimensions so that it could notify its freight forwarder of the shipment. RST did not respond to NATS' requests and inquiries.

51. Despite its promise, RST did not deliver a single hazmat suit by September 30, 2020.

52. On or about October 1, 2020, NATS sent a demand letter requesting immediate shipment of the Order or else RST would face immediate cancellation.

53. In response, Edward called NATS' president and told him to "be careful" and threatening him not to bother the recipient of the $335,000 -- DeMeo.

54. In or around mid-October 2020, in violation of the Order, RST sent a small shipment directly to Saudi Arabia, and not through the freight forwarder as required by the Order.

55. The shipping documents for the small shipment indicated it included 22 suits and not the 1500 suits NATS ordered. In light of the non-conformance, NATS rejected the delivery.

56. On or about October 21, 2020, NATS sent a letter through counsel rejecting the shipment pursuant to Conn. Gen. Stat. § 42a-2-602(b) for failure to comply with the terms of the order including (1) for failing to use NATS' freight forwarder, and (2) for failing to deliver the correct quantity of hazmat suits.

57. In its October 21, 2020 letter, NATS also notified RST that it was canceling the Order pursuant to Conn. Gen. Stat. § 42a-2-712(2) for its non-delivery.

58. NATS has been forced to purchase replacement suits at a greater cost to NATS.

59. RST has not returned NATS' money or compensated NATS for the higher priced suits.

## COUNT ONE

## BREACH OF CONTRACT AGAINST RST

60. NATS repeats and realleges paragraphs 1 through 59 above, as if fully set forth herein.

61. NATS and RST are parties to a contract requiring RST to deliver 1500 hazmat suits by April 2020 and for NATS to pay $954,650 in two installments.

62. NATS paid the first installment payment of $330,277.50 on time.

63. NATS has performed all of its obligations under the Order.

64. RST did not deliver the 1500 hazmat suits by or before April 2020.

65. RST has no intent to perform its obligations under the Order.

66. By the foregoing conduct, RST breached the parties' contract.

67. RST was aware of the 10% penalty it would incur from its customer because of the delay. Accordingly, such damages to NATS were foreseeable to the RST.

68. NATS is entitled to compensatory damages in an amount equal to the benefit of the bargain.

69. NATS is entitled to incidental and consequential damages including, but not limited to, the 10% delivery penalty.

## COUNT TWO

## FRAUD AGAINST ALL DEFENDANTS

70. NATS repeats and realleges paragraphs 1 through 69 above, as if fully set forth herein.

71. In or around November 2019, RST provided a representative hazmat suit of sufficient quality to meet the requirements of the Government of Saudi Arabia.

72. In or around December 2019, Edward, on behalf of RST, represented to NATS that RST could deliver 1500 hazmat suits by or before April 2020.

73. In March and May 2020, Edward, on behalf of RST, represented to NATS that it was subject to a federal and state ordered shut down due to the COVID-19 pandemic and could not perform the Order.

74. In or around May 2020, Edward, on behalf of RST, represented to NATS that it was finalizing production.

75. In or around June 2020, RST provided a test article of a hazmat suit of greatly diminished quality to the sample hazmat suit provided prior to issuance of the Order. The test article did not meet the Government of Saudi Arabia requirements.

76. In or around July 2020, Edward, on behalf of RST, represented to NATS and the Government of Saudi Arabia that it would ship 1500 hazmat suits under the Order by September 30, 2020.

77. RST did not deliver hazmat suits by any of the aforementioned deadlines.

78. RST was not subject to a mandatory shut down due to the COVID-19 pandemic.

79. RST delivered suits of substantially degraded quality to NATS.

80. Edward knew his statements were false at the time and were made to induce NATS into making a substantial down payment for suits, at the direction of DeMeo, and to induce NATS not to mitigate its damages by seeking alternative delivery sources.

81. In reliance on Edward's representations, and to appease DeMeo's demands, NATS entered into the Order with RST and paid it a substantial down payment of $330,277.50.

82. In reliance on Edward's representations, NATS did not pursue an alternative source for the hazmat suits for months.

83. NATS has been injured in the amount of its lost down payment and the penalty incurred for failure to meet its customer's order deadline.

84. NATS is entitled to compensatory damages, including the return of its entire advanced payment plus interest.

85. NATS is entitled to punitive damages under Connecticut law.

86. NATS is entitled its attorneys' fees under Connecticut law.

## COUNT THREE

**PIERCING CORPORATE VEIL - IDENTITY AND INSTRUMENTALITY RULES AGAINST DEMEO**

87. NATS repeats and realleges paragraphs 1 through 86 above, as if fully set forth herein.

88. Defendant RST is the alter ego of Ronald DeMeo, and had no assets, no real corporate existence, no independence and was dominated by DeMeo, and/or the ownership and management of such that its corporate esitence should be ignored and the liability should be imposed on DeMeo.

## COUNT FOUR

**VIOLATION OF CONNECTICUT'S UNFAIR TRADE PRACTICES ACT
CONN. GEN. STAT. § 42-110a *et seq.* AGAINST ALL DEFENDANTS**

89. NATS repeats and realleges paragraphs 1 through 88 above, as if fully set forth herein.

90. Defendants are people engaged in trade or commerce in the State of Connecticut within the meaning of Conn. Gen. Stat. § 42-110a.

91. DeMeo is the sole shareholder of RST and directs the entirety of its conduct.

92. Edward, on behalf of RST and DeMeo, fraudulently represented RST's ability to perform its obligations under the Order.

93. RST provided deceptive sample articles to induce NATS to issue the Order to RST.

94. DeMeo wrongfully demanded a substantial advanced payment from NATS despite RST's fraudulent representations.

95. Edward continued to fraudulently represent RST's ability to provide the hazmat suits. Edward made serial misrepresentations to extend the delivery date.

96. RST had no intent to deliver 1500 hazmat suits to NATS when NATS issued the Order.

97. RST's test article was of substantially lower quality than the test article provided prior to issuance of the Order.

98. Defendants have wrongfully retained NATS money despite not completing the Order.

99. The conduct of the Defendants described above is deceptive, immoral, unethical, oppressive, or unscrupulous; offensive to public policy; and/or causes substantial injury to competitors, and/or other businesspersons. Based on the foregoing, Defendants' conduct constitutes unfair and deceptive acts and practices in the conduct of trade or commerce in violation of Conn. Gen. Stat. § 42-110b.

100. As described above, Defendants engaged in its actions willfully, intentionally, knowingly and it demonstrates calculated, deceitful, and unfair conduct, and reckless indifference to NATS's rights. Accordingly, NATS is entitled to punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a).

101. As a result of the foregoing unfair and/or deceptive acts and practices, NATS has suffered an ascertainable loss within the meaning of Conn. Gen. Stat. § 42-110g(a), and has suffered, and will continue to suffer, damages in an amount to be determined at trial.

102. Pursuant to Conn. Gen. Stat. § 42-110g(c), upon commencement of this action, NATS gave due notice of its claims to the Attorney General and the Commissioner of Consumer Protection for the State of Connecticut.

**WHEREFORE**, NATS seeks:

1. "Cover" damages, including incidental and consequential damages, pursuant to Conn. Gen. Stat § 42a-2-711, Conn. Gen. Stat. § 42a-2-712(2), Conn. Gen. Stat § 42a-2-713, and Conn. Gen. Stat § 42a-2-715;

2. Compensatory damages, including return of its deposit;

3. Punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a) and/or at law;

4. Attorney's fees and costs pursuant to Conn. Gen. Stat. § 42-110g(d) and/or at law;

5. Pre and post judgment interest; and

6. Any other such relief at law or in equity that the court deems just and appropriate.

## JURY DEMAND

NATS demands a trial by jury on all issues so triable.

PLAINTIFF,
NATS, INC.

By: /s/ Glenn M. Cunningham
Glenn M. Cunningham (ct09995)
John J. DiMarco (ct29540)
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, Connecticut 06103-1919
Tel: (860) 251-5000
Fax: (860) 251-5218
Email: gcunningham@goodwin.com
Email: jdimarco@goodwin.com