UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NATS, INC. | : | NO. 3:21-cv-00430-AWT |
| | : | |
|     PLAINTIFF, | : | |
| | : | |
| v. | : | |
| | : | |
| RADIATION SHIELD TECHNOLOGIES, INC., DANIEL EDWARD, AND RONALD DEMEO, | : : : | |
| | : | |
|     DEFENDANTS. | : | JUNE 21, 2021 |

## DECLARATION OF SYED MASWOOD

STATE OF CONNECTICUT        )
                            ) ss.:
COUNTY OF MIDDLESEX         )

I, SYED MASWOOD, being duly sworn, depose and say:

1. I am over the age of eighteen and believe in the obligations of an oath.

2. I am the President of NATS, Inc. ("NATS"), the plaintiff in the above captioned action.

3. I make this declaration based on my personal knowledge and my personal review of the books and records of NATS. I am submitting this declaration in support of Plaintiff's Opposition to Defendants' Motion to Compel Arbitration, to Stay this Action and/or In The Alternative Motion to Dismiss. (ECF No. 16.) If called upon, I could and would competently testify to the matters stated herein.

4. I am familiar with, and was intimately involved with, NATS' efforts to purchase 1500 hazmat suits from defendant Radiation Shield Technologies, Inc. ("RST").

5. Since approximately October 2018, NATS has received quotations from RST for hazmat suits for delivery to various international customers. During that time,

NATS and RST had never discussed the need for a non-disclosure agreement or a distributor agreement to cover their business dealings.

6. In or around November 2019, NATS received a request from its customer in Saudi Arabia, Tech Flow Co. ("Tech Flow"), to take over a transaction Tech Flow was attempting to enter into with RST for the purchase of 1500 hazmat suits. NATS had previously sought to work with RST on this 1500 hazmat suit sale to Tech Flow, but RST opted to work on the deal directly with Tech Flow once it learned about the sale from NATS.

7. After NATS took over the transaction, on or about November 18, 2019, RST issued an invoice to NATS for 1500 hazmat suits. The invoice did not include any conditions that NATS enter into a non-disclosure agreement or distributor agreement. A true and correct copy of the email and the invoice from RST is attached as Exhibit A to this Declaration.

8. On or about November 20, 2019, NATS issued a purchase order for 1500 hazmat suits using the prices and quantities listed in RST's invoice. A true and correct copy of the email and the purchase order from NATS is attached as Exhibit B to this Declaration.

9. Around the same time, NATS sent a sales order confirmation Tech Flow.

10. Shortly after receiving NATS' purchase order, RST requested an amendment to the purchase order to make the payment terms conform with its invoice. NATS and RST ultimately agreed to a 35% advanced payment and amended the purchase order. Those discussions are mostly captured in the email chain that is Exhibit C to this

Declaration and referred to below. NATS and RST did not discuss a non-disclosure agreement or a distributor agreement.

11. On or about November 27, 2019, pursuant to the parties' agreement, NATS issued an amended purchase order for 1500 hazmat suits including the agreed to 35% advanced payment (the "Purchase Order"). The Purchase Order does not reference a non-disclosure agreement or distributor agreement. A true and correct copy of the email and attached Purchase Order is Exhibit C to this Declaration.

12. On or about December 3, 2019, NATS received an email from RST sending a form Mutual Confidentiality and Non-Disclosure Agreement and form Distributor Agreement. A true and correct copy of the email correspondence from RST to NATS and attached agreements is Exhibit D to this Declaration.

13. In my experience, commercial parties typically discuss non-disclosure agreements and distributor agreements at the beginning of their commercial relationship and before issuing quotes and agreeing on firm purchase orders and not after. These agreements typically protect product information, pricing information, and other proprietary information and define the parties' relationship when dealing with customers.

14. On or about December 6, 2019, RST sent an email to NATS stating the intent of RST's standard Mutual Confidentiality and Non-Disclosure Agreement is for "confidentiality." A true and correct copy of Mr. Edward's email is Exhibit E to this Declaration.

15. During numerous phone calls, Mr. Daniel (Dan) Edward of RST clarified for me the intent of RST's standard Mutual Confidentiality and Non-Disclosure Agreement

is to protect the confidentiality of price and proprietary information related to the products offered by RST and not in anyway to supersede the Purchase Order or RST's prior invoice.

16.    Notwithstanding the above clarifications, on or about December 9, 2019, NATS refused to sign the Distributor Agreement and expressed reservations about certain terms of the Mutual Confidentiality and Non-Disclosure Agreement, and the need for a non-disclosure agreement generally. A true and correct copy of that communication is Exhibit F to this Declaration.

17.    On or about December 11, 2019, NATS returned the Mutual Confidentiality and Non-Disclosure Agreement signed with the understanding that the agreement was non-binding, and expressly conditioned upon entry into a "Definitive Agreement," which NATS understood to mean the Distributor Agreement that NATS refused to sign. NATS did not believe the Mutual Confidentiality and Non-Disclosure Agreement would bind NATS until the parties entered into a Distributor Agreement. Accordingly, NATS requested an editable copy of the Distributor Agreement. A true and correct copy of NATS' communication and its attachment is Exhibit G to this Declaration.

18.    On or about December 11, 2019, NATS received an email from RST stating that RST's legal department found a copy of a prior non-disclosure agreement between NATS and RST and that the Mutual Confidentiality and Non-Disclosure Agreement, signed by NATS on the condition that the parties enter into the Distributor Agreement, "may not be necessary." A true and correct copy of the communication from RST is Exhibit H to this Declaration.

19. RST never provided a copy of the old non-disclosure agreement referenced in the December 11, 2019 email. To the best of NATS' knowledge, no prior non-disclosure agreement exists between NATS and RST.

20. On or about December 12, 2019, NATS continued to convey its understanding that the Mutual Confidentiality and Non-Disclosure Agreement was non-binding until the parties entered into a Distributor Agreement for future orders. A true and correct copy of the communication is Exhibit I to this Declaration.

21. NATS and RST never entered into a Distributor Agreement.

22. On or about December 16, 2019, an employee of Tech Flow, NATS' customer in Saudi Arabia, sent an email to RST attaching the Mutual Confidentiality and Non-Disclosure Agreement attached as Exhibit 1 to the Declaration of Dan Edward dated May 18, 2021. A true and correct copy of Tech Flow's December 16, 2019 email with its attachment is Exhibit J to this Declaration.

23. Tech Flow is an independent foreign distributor and, in this case, NATS' customer for resale of RST's products purchased by NATS. NATS did not provide Tech Flow any express or implied authority to speak for NATS on contractual matters including, but not limited to, the terms of the Mutual Confidentiality and Non-Disclosure Agreement. NATS does not own or control Tech Flow and the representative that sent the Mutual Confidentiality and Non-Disclosure Agreement is not an employee of NATS.

24. I provided the copy of the Mutual Confidentiality and Non-Disclosure Agreement to the Tech Flow representative for informational purposes only. I did not authorize Tech Flow to send the Mutual Confidentiality and Non-Disclosure Agreement to RST on NATS' behalf.

25. NATS did not separately assent to the Mutual Confidentiality and Non-Disclosure Agreement attached as Exhibit 1 to the Declaration of Dan Edward dated May 18, 2021. NATS has not received any benefits under the NDA.

26. NATS and RST did not incorporate the terms of the Mutual Confidentiality and Non-Disclosure Agreement that is attached as Exhibit 1 of the Declaration of Dan Edward into the Purchase Order.

I declare under penalty of perjury under the laws of the United States, including 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 21st day of June, 2021 in Middletown, Connecticut.

_____
SYED MASWOOD

SYED R. MASWOOD

June 21, 2021

Middletown, CT