UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NATS, Inc., | Case No. 3:21-CV-00430-AWT |
| *Plaintiff,* | |
| v. | |
| RADIATION SHIELD TECHNOLOGIES, INC. DANIEL EDWARD, AND RONALD DEMEO, | May 17, 2023 |
| *Defendants.* | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THE AMENDED MOTION TO COMPEL ARBITRATION**

Pursuant to the Federal Arbitration Act, 9 U.S.C §§ 1-16, Defendants Radiation Shield Technologies, Inc. ("RST") and Ronald DeMeo ("DeMeo") (collectively, the "Defendants") submit this amended motion for an order compelling Plaintiff, NATS Inc. ("NATS") to arbitrate all the claims set forth in the complaint as well as any fraud in the inducement defenses to arbitration pursuant to the arbitration agreement it willingly entered.

**I.    INTRODUCTION**

Discovery has revealed evidence that confirms that NATS unequivocally and without reservation consented to the non-disclosure agreement (the "NDA") that contains an agreement to arbitrate. Not introduced in full at either this Court's preliminary injunction hearing or the November 28, 2022 hearing, email correspondence between NATS and its reseller Tech Flow manifests the objective assent from NATS needed to form an agreement to arbitrate.

On December 12, 2019, RST wrote to Tech Flow regarding the draft NDA. *See* Email Corr. from D. Edward to N. Al-Fanjery (Dec. 12, 2019, 11:41 PM), attached as **Exhibit A**. This complete email chain was not previously introduced into evidence. RST wrote in that email: "Please have

1

them [i.e., NATS] initial every page and sign the last page. Thank you Naji!" *Id.* The file name of the agreement was nondescriptly labeled as: "2019_12_12_15_31_58.pdf." *Id.* That email chain reflects that Tech Flow forwarded that instruction and request to Maysoon Hasan and Syed R. Maswood, NATS' sales manager and President, respectively, saying only "FYI." Email Corr. from N. Osman to Maysoon Hasan, cc'g Syed R. Maswood (Dec. 12, 2019, 4:01 p.m.).

The following day NATS sent Tech Flow an agreement that was initialed on every page and signed on the last page—just as RST requested. Email Corr. from Syed Maswood to N. Osman & Maysoon Hasan, cc'g Dr. Awatef Gacem (Dec. 13, 2019, 7:17 p.m.), attached as **Exhibit B**. The signed agreement was entitled "NATS RST NDA Rev1-Dec 13 2019.pdf," reflecting the date of its execution and calling the agreement the "***NATS RST NDA***." *Id.* (emphasis added). By labeling the document in that manner, NATS was aware of what it had signed and between which parties. *See id.* The body of the email includes no reservations, no conditions, and no restrictions on NATS' assent reflected in the attached agreement. *Id.* The message NATS delivers to Tech Flow is: "Attached." *Id.* No other e-mail communications have been produced to qualify or modify NATS' assent.

On this record, the Court must compel arbitration. The correspondence reflects an objective assent by NATS to the agreement and its terms without any reservation or instruction to Tech Flow to the contrary. Besides its claims of fraud, NATS has only one defense to the enforceability of NDA's arbitration clause: NATS thought the agreement would not be binding absent execution of a later licensing agreement between NATS and RST. But if NATS had read the NDA it signed, it would know that the NDA was not contingent upon any such agreement as was the case in earlier drafts of that document. It is no defense—whether in Connecticut or Florida—to say one did not read the contract that it agreed to be bound by. This Court should compel arbitration.

II.     PROCEDURAL HISTORY

The Defendants filed the original motion to compel arbitration on May 18, 2021. Defendants' primary objective was to enforce the arbitration clause embedded in the NDA that both parties had signed in December of 2019. (*See* ECF Nos. 16-17.) On June 7, 2021, Plaintiff filed its opposition to the motion. (*See* ECF No. 26.) On July 13, 2021, Defendants filed their reply in support of the motion to compel arbitration. (*See* ECF No. 30.) On August 31, 2021, Plaintiff submitted a request for a preliminary injunction. (*See* ECF No. 40.) On October 12, 2021, Defendants responded to this motion. (*See* ECF No. 53.) On October 14, 2021, NATS replied in support of the preliminary injunction. (*See* ECF No. 58.) On February 7 and 8, 2022, the Court heard argument on the preliminary injunction. (*See* ECF Nos. 79, 80.) On November 28, 2022, the Court held a hearing to submit supplemental evidence on the motion to compel arbitration. (*See* ECF No. 135.)

This amended motion incorporates by reference the arguments, factual bases, evidence, and legal rationales presented in the Defendants' original motion to enforce arbitration, their reply supporting the motion, and their response to NATS' preliminary injunction as well as their oral arguments before the Court. (*See* ECF Nos. 16-17, 30, 53.)

III.    FACTUAL BACKGROUND

In addition to the factual context provided in Defendants' motion to compel arbitration, (*see* ECF No. 30), Defendants advance the following facts in support of their Amended Motion to Compel Arbitration ("Amended Motion"):

Throughout November and December of 2019, RST, NATS, and Tech Flow were actively engaged in negotiations for the purchase of 1,500 hazmat suits for end use by the Saudi Arabian Government. (*See* ECF No. 30 p.5.) After much back and forth, on November 27, 2019, Maysoon

Hasan (representing NATS) sent a revised purchase order to Dan Edward (representing RST) for the purchase of the hazmat suits. (*See* ECF No. 70, Ex. 26, Ex. D p.37.) RST, in response, stated that its acceptance would only be given once an NDA was established with both NATS and Tech Flow. (*Id.*) RST maintained its stance and declined to issue an invoice until the NDA was signed. (*See* ECF No. 70, Ex. 26, Ex. F p. 100; *see also* ECF No. 70, Ex. 26, Ex. I p.167.) NATS agreed to sign the NDA on December 6, 2019. (*Id.*)

The parties underwent various discussions regarding the NDA's language during this period. (*See generally* ECF Nos. 79, 80.) Initially, the NDA called for an additional "Definitive Agreement" before the NDA could be enforceable. (*See* ECF No. 70, Ex. 26, Ex. I, p. 167.) There were also certain sections that parties deleted from the NDA because they were inapplicable to contemplated purchase, e.g., section 5 required "Ballistic Resistant [P]ersonal Body Armor . . . [T]est" testing. (*See* ECF No. Ex. 26, Ex. I p. 172.) It was evident to NATS that "[w]ithout a legal agreement no one can proceed . . . ." (*Id.* p. 165.)

On December 12, 2019, RST revised the NDA, incorporating NATS' comments, and provided it to Tech Flow, who was helping the parties reach a mutually beneficial agreement. (Exhibit A.) The correspondence read: "Please have [NATS] initial every page and sign the last page. Thank you Naji!" (*Id.*) (Naji was a reference to Naji Osman, executive and sales manager of Tech Flow, the purchasing agent for the hazmat suits through NATs.) On that same day, Mr. Osman forwarded to NATS the email (which contained the specific requests from RST) along with the NDA. The recipients were Maysoon Hasan and Syed R. Maswood, NATS' sales manager and co-president, respectively (*Id.*) The attached NDA was also signed and initialed on every page by Dr. Ronald DeMeo, RST's CEO and President. (Ex. A pp. 2-8.)

4

The very next day, Mr. Maswood responded to Tech Flow's email with the signed and executed NDA agreement. (Ex. B.) Dr. Awatef Gacem—NATS' President at the time—not only signed but also initialed every page of the document, even alongside the arbitration clause. (*Id.*) NATS had scanned the document and called it the "NATS RST NDA," which it was. (*Id.*) And NATS dated it the same date Dr. Gacem apparently executed the agreement: December 13, 2019. (*Id.*) The body of the email simply said, "Attached." (*Id.*) There was no instruction to Tech Flow not to forward the email to RST. There was no expression that the NDA was contingent upon future events. There was no hint that there was anything but objective assent to the NDA.

Mr. Osman forwarded Mr. Maswood's email and the signed NDA to RST on December 16, 2019. (*See* ECF No. 70, Ex. 26, Ex. J p. 216.) Dr. Gacem, Ms. Hasan, and Mr. Maswood were copied on the email. (*Id.*) The message read: "Attached herewith signed NDA from NATS, please send your invoice ASAP to NATS." (*Id.*) None of NATS' representatives who were carbon copied on that email said anything to dispute the validity of the agreement or their objective assent until **eleven months later** after a dispute arose between the parties during Covid.

## IV.  LEGAL STANDARD

The threshold question of whether the parties entered into an agreement to arbitrate is "simply a matter of contract," *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016), for which this Court applies "ordinary state-law principles that govern the formation of contracts." *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014). Under both Florida and Connecticut law, a party signing a written agreement is conclusive evidence of contract formation. *See Bryant v. Am. Exp. Fin. Advisors, Inc.*, 595 N.W.2d 482, 486 (Iowa 1999) (applying Florida law to enforce arbitration agreement requiring arbitration of statutory discrimination claims); *D'Antuono v. Serv. Road Corp.*, 789 F. Supp. 2d 308, 323 (D. Conn. 2011) (same under

5

Connecticut law). Under Florida law, "parties who sign contracts will be bound by them regardless of whether they have read them or understood them." *MCC–Marble Ceramic Ctr., Inc. v. Ceramica Nuova d'Agostino, S.p.A.*, 144 F.3d 1384, 1387 n.9 (11th Cir. 1998); *see Reliable Finance Co. v. Axon*, 336 So. 2d 1271, 1273–74 (Fla. 2d DCA 1976) (finding a party to a writing cannot deny its contents on the ground that he or she signed it without reading it first); *Linville v. Ginn Real Estate Co., LLC*, 697 F. Supp. 2d 1302, 1308–09 (M.D. Fla. 2010) ("A party who signs an instrument is presumed to know its contents. . . . He cannot avoid his obligations thereunder by alleging that he did not read the contract, or that the terms were not explained to him, or that he did not understand the provisions" (*citing Benoay v. E.F. Hutton & Co.*, 699 F. Supp. 1523, 1529 (S.D. Fla. 1988))). The same holds true under Connecticut law: "The general rule is that where a person of mature years, who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to read it, and notice of its contents will be imputed to him if he negligently fails to do so" *Ursini v. Goldman*, 118 Conn. 554, 562 (1934).

## V. ARGUMENT

The Court should enforce the arbitration clause provided in the NDA signed and initialed by NATS because it objectively manifested NATS' assent to be bound by the agreement. NATS' objective assent to the NDA is clearly demonstrated through its actions and the plain language of the agreement.

Black letter contract law holds that parties are bound to a contract based on their objective manifestations and not their subjective intent or baseless misunderstandings. *Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997); *Bowen v. Taylor-Christensen*, 98 So. 3d 136, 140-41 (Fla. 5th DCA 2012), *approved sub nom. Christensen v. Bowen*, 140 So. 3d 498 (Fla. 2014); *R.A. Villanova & Co. v. Chatfield*, No. CV040182702S, 2007 WL 3173669, at *4 (Conn. Super. Ct. Oct. 11, 2007).

In the present case, NATS' actions embody objective assent. Evidence submitted during hearings before this Court, along with the additional evidence submitted here, support that conclusion. The email from RST, forwarded by Tech Flow, directed NATS to "initial every page and sign the last page." (Ex. A.) And NATS did—a day later. NATS' response was devoid of any conditions, qualifiers, or contingencies. There was no suggestion that the NDA was subordinate to a separate agreement or dependent on the occurrence of some future event.

Further reinforcing NATS' objective assent is the testimony of Mr. Maswood, who was called by NATS to testify at the preliminary injunction hearing. (*See* ECF No. 79.) Mr. Maswood, during the hearing, attested that he neither received nor sent the executed NDA. (*Id.* 107:25-108:1-3.)

> 25  something in the future. This is the only
>
> Case 3:21-cv-00430-AWT   Document 79   Filed 02/17/22   Page 108 of 299
>
> 1  conclusion I can make from it because I never
> 2  received it. I never sent it. So how did this
> 3  thing end up as a legal document?

(*Id.*) However, NATS' own record contradicts this statement. In reality, it was Mr. Maswood who sent the signed and executed NDA to Tech Flow on December 13, 0219. (Ex. B.) Moreover, Mr. Maswood, along with Dr. Gacem and Ms. Hasan, was included in the carbon copy list of the email Tech Flow sent to RST, which contained the signed and executed NDA. (*See* ECF No. 70, Ex. 26, Ex. J p. 216.)

Mr. Maswood also asserted that he had orally communicated to Tech Flow that the executed NDA was merely for "informational purposes." (*Id.* 110:12.) However, NATS did not call Tech Flow to testify and corroborate that testimony or present any evidence that such a qualifier had been shared with RST. And interestingly, neither he nor the two officers who were copied on this email protested when the signed NDA was sent to RST by Tech Flow. This passive acceptance further supports the argument that there was objective assent to the NDA. If NATS had contemporaneously objected and claimed that the NDA was sent in error, they might have had a plausible argument against objective assent.

Furthermore, NATS was aware that the purchase order for hazmat suits hinged on the execution of the NDA. (*See* ECF No. 70, Ex. 26, Ex. F p. 100; *see also* ECF No. 70, Ex. 26, Ex. I p.167.) With this understanding, NATS, desirous to expedite the transaction, signed the NDA. (Ex. B.) NATS neither attempted to restrict Tech Flow from submitting the NDA to RST nor did it object when Tech Flow forwarded the signed NDA to RST three days later despite three officers of NATS being carbon copied on that email, including Dr. Gacem, who initialed every page and signed the agreement. (*See* ECF No. 70, Ex. 26, Ex. J p. 216). It's noteworthy that NATS' first objection to the NDA materialized a considerable eleven months later, in October 2020. The significant delay in expressing any objection further underscores the fact that NATS had assented to the NDA and its terms. The law does not allow for retroactive withdrawal of assent that was clearly and objectively given.

Each of these actions and inactions by NATS are unequivocal objective manifestations of its assent, underlining its intent to be bound by the terms of the NDA. The law, as elucidated in the aforementioned case law, does not permit retroactive rescission of assent that was manifestly and objectively given.

Therefore, in line with the principles of contract law and considering the objective manifestations of assent by NATS, the Court should find that NATS did assent to the NDA. Consequently, the Court should compel arbitration pursuant to the arbitration clause in the NDA.

## VI.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court issue an order compelling Plaintiff to arbitrate all the claims set forth in the complaint to arbitrate all the claims set forth in the complaint as well as any fraud in the inducement defenses to arbitration pursuant to the arbitration agreement it willingly entered.

Dated: May 17, 2023

Respectfully submitted,

KOZYAK TROPIN & THROCKMORTON LLP
*Counsel for Defendants*
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

By: /s/ *Javier A. Lopez*
Javier A. Lopez
Florida Bar No.: 16727
jal@kttlaw.com
Facundo M. Scialpi, Esq.
Florida Bar No.: 1030791
fscialpi@kttlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by Notice of Electronic Filing generated by CM/ECF, on May 17, 2023, on all counsel or parties of record on the Service List below.

By: /s/ *Javier A. Lopez*
Javier A. Lopez

## SERVICE LIST

Glenn M. Cunningham
Sarah Niemiroski
SHIP & GOODWIN LLP
One Constitution Plaza
Hartford, Connecticut 06103-1919
Tel: (860) 251-5000
Fax: (860) 251-5218
Email: gcunningham@goodwin.com
Email: sniemiroski@goodwin.com
*Attorneys for Plaintiff NATS, Inc.*