| | |
|---|---|
| **From:** | Naji Osman <naji@techflow.com.sa> |
| **Sent:** | Thursday, December 12, 2019 4:01 PM |
| **To:** | Maysoon Hasan |
| **Cc:** | Syed R. Maswood |
| **Subject:** | Fwd: Revised NDA |
| **Attachments:** | 2019_12_12_15_31_58.pdf |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

FYI

---------- Forwarded message ---------
From: **Dan Edward** <dedward@radshield.com>
Date: Thu, 12 Dec 2019 at 11:41 PM
Subject: Revised NDA
To: Naji Al-Fanjery <naji@techflow.com.sa>


Please have them initial every page and sign the last page. Thank you Naji!

Dan Edward
Director of Sales and Business Development
866.733.6766 ext 110
Direct Line 305.774.6075
Cell 786.519.6167

--
Naji Osman,CBRNe, NDT
| Executive & Sales Manager | Tech Flow Co. |
|P.O.Box 286947 Riyadh 11323| Kingdom of Saudi Arabia |
|Tel :( +966) 11 487 9944 | F: (+966) 11 4533411| M: (+966)507929977 |

1



## MUTUAL CONFIDENTIALITY
## AND NONDISCLOSURE AGREEMENT

THIS MUTUAL CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT is made and entered into this 2nd day of December, 2019 (the "Effective Date") by and between RADIATION SHIELD TECHNOLOGIES, INC., a Delaware corporation ("RST"), and **NATS INCORPORATED** ("Company") with its headquarter offices at : 511 Centerpoint Drive, Middletown, CT 06457.

### WITNESSETH:

**Whereas**, the Company has expertise as a distributor;

**Whereas**, RST possesses certain patent and/or other intellectual property rights pertaining to the production of both traditional and nano-based radiation blocking products; and in the lamination, injection molding, thermaforming and compounding of various materials to its products, including but not limited to chemical and biological resistant films and rubber; and

**Whereas,** the parties desire to evaluate a possible business relationship or transaction between RST and the Company, whereby the Company may sell the Demron ICE Suit (the "Proposed Transaction") and whereby the parties may provide certain confidential information to each other concerning their respective proprietary information, business, financial condition, and operations.

**In consideration thereof**, the parties agree as follows:

1. **Evaluation Material.**

    1.1. As used herein, the term "Evaluation Material" means any of the following types of information: (i) all data, know-how, formulae, processes, technology, ingredients, methods, procedures, inventions, ideas, business methods, business practices, business concepts, client lists, information, research, samples, models, prototypes, reports, analyses, notes, interpretations, forecasts, records, documents, agreements and information which are proprietary to a party, which are not generally available to the public, which the disclosing party or its Representatives (as defined below) will provide or previously has provided to the receiving party or its Representatives in connection with the Proposed Transaction, and/or which the receiving party or its Representatives receive or receive knowledge of or access to in connection with the Proposed Transaction, at any time and in any form, whether or not expressly marked as proprietary or confidential;

T: 866.7DEMRON
866.733.6766

F: 866.5DEMRON
866.533.6766

P.O. Box 14-4254
Coral Gables, FL 33114

www.RadShield.com

1

NATS02054

RST

www.RadShield.com

(ii) all notes, analyses, compilations, studies, interpretations or other documents and all copies thereof prepared by either party or its Representatives, which contain, reflect or are based upon, in whole or in part, any of the information which is described in the preceding clause (i); and (iii) the content and substance of any discussions or negotiations between the parties (or its Representatives) and the fact that such discussions or negotiations have taken place. The term "Evaluation Material" does not include information that (a) is or becomes generally available to the public other than as a result of a disclosure by the receiving party or its Representatives; (b) a party can show was within its possession prior to its being furnished to such party by or on behalf of the other; (c) was received by a party on a non-confidential basis from a third party; or (d) is independently developed by a party without the aid, application or use of the Evaluation Material.

1.2.   As used herein, the term "Representatives" means, collectively, the respective directors, officers, employees, agents, attorneys, professionals, or technical consultants of each party, as the context requires.

1.3.   As used herein, the term "person" shall be broadly interpreted to include without limitation any corporation, partnership, joint venture, trust, or individual.

1.4.   The parties acknowledge that all Evaluation Material is the exclusive property of the disclosing party and that the receiving party shall have no proprietary interest therein. Each party will use the other party's Evaluation Material solely for the purpose of evaluating the Proposed Transaction and shall not use any Evaluation Material in any way directly or indirectly detrimental to the disclosing party. A receiving party may disclose the Evaluation Material of the other or portions thereof only to those of its Representatives who need to know such information for the purpose of evaluating the Proposed Transaction <u>and</u> who agree to keep such information confidential.

1.5.   The receiving party and its Representatives shall keep confidential all Evaluation Material of the disclosing party. Each party will inform each of its Representatives of the confidential nature of the Evaluation Material and of the provisions of this agreement, and will cause each such Representative to agree to comply fully with the restrictions on use of the Evaluation Material contained in this agreement. Each party will be responsible for any breach of this agreement or improper use of Evaluation Material by any of its Representatives or by any other person to whom information is provided by such party or its Representatives.

**1.6.** Without the prior written consent of the other party, each of the parties agrees that it will not, and will direct its Representatives not to, disclose to any person either the fact that any investigations, discussions or negotiations are taking place concerning a possible business relationship or transaction, that either party has requested or received Evaluation Material from the other, or any of the terms, conditions, or other facts with respect to any such business relationship or transaction, including, but not limited to, the status thereof and the terms or provisions of any proposal or offer made by either party, whether written or oral. Either party may only make such disclosures required by applicable securities laws as are necessary to comply therewith or with the rules and regulations of any applicable stock exchange.

**2.**    **Samples/Models/Prototypes/Assignment.**

**2.1.** The receiving party shall not, without prior written consent of the disclosing party test, evaluate, or use for purposes other than set forth in this agreement any samples, models, prototypes, or other Evaluation Materials provided by the disclosing party. Further, the receiving party shall not, without the express written consent of the disclosing party, analyze, reverse engineer, decompile, dissemble, sell, transfer, disclose, or publish such samples, models, prototypes, or other Evaluation Material. Unless a separate Joint Development Agreement has been established between both parties, any modification, improvements, or re-engineering of RST's technology whether patentable or not shall be wholly and unconditionally assigned to RST.

**2.2.** However, the receiving party may conduct testing in order to determine the performance and suitability of the samples, models, prototypes, or other Evaluation Material for processing on its equipment, in order to evaluate the results and whether the finished product contains certain desired properties, and/or for such other limited purposes as contemplated by the parties as of the date of this agreement. Each party permits the other to conduct such testing provided that such testing shall be limited to what is reasonably necessary for the Proposed Transaction and that the receiving party shall not disclose the results of such testing to any third party without the prior written consent of the disclosing party.

**2.3.** Any improvements, modifications, re-designs, or new applications of RST materials performed by Company or any of its officers or employees pursuant to the Proposed Transaction, patentable or not, will be wholly and unconditionally assigned to RST. Any and all test data and know how regarding the proposed project shall be fully disclosed to RST and be the property of RST. No test results or know how regarding the proposed project shall be disclosed by the Company without RST's written consent. Such consent can only be given by the Chief Executive Officer of RST.

## 3. Compelled Disclosures.

**3.1.** In the event that Company, or any of its Representatives, becomes legally compelled (e.g., by deposition, interrogatory, request for documents, subpoena, civil investigative demand or similar process) to disclose any of RST's Evaluation Material, such party shall provide RST with prompt prior written notice of such requirement so that RST may seek a protective order or other appropriate remedy and Company shall cooperate fully with the RST's efforts to obtain any such relief. In the event that such protective order or other remedy is not obtained, Company will provide only that portion of the Evaluation Material that it is advised by written opinion of counsel is legally required. Such disclosure may expose Company to any liability under this agreement if such disclosure was caused by, or resulted from, a previous disclosure by such party or its Representatives that was not permitted by this agreement.

**3.2.** The disclosing party agrees to exercise its best efforts to obtain a protective order or other reliable assurance that confidential treatment will be accorded such Evaluation Material. The party being compelled to make disclosure shall be reimbursed for all reasonable expenses incurred by it or its Representatives in complying with this paragraph 3, except to the extent such amounts are recoverable from the party compelling disclosure. Such party agrees to exercise its best efforts to recover all expenses that are recoverable from the party compelling disclosure.

## 4. Treatment of Information.

**4.1.** If at any time either party requests, the other party promptly will return to the requesting party all copies of such party's Evaluation Material in its possession or in the possession of its Representatives, will destroy all copies of any analyses, compilations, studies, or other documents prepared by it or for its use containing or reflecting any such Evaluation Material, and will furnish the requesting party with prompt written confirmation of such destruction.

**4.2.** Notwithstanding the return or destruction of any Evaluation Material, the parties will continue to be bound by their confidentiality and other obligations under this agreement.

## 5. No Obligation With Respect to Negotiations.

**5.1.** Each party reserves the right to reject any and all proposals made by the other or any of its Representatives with respect to a business relationship or transaction or otherwise and to terminate negotiations and discussions with respect thereto at any time so long as the rejection/termination is in writing. Each party's obligations under this agreement will survive any such rejection or termination.

## 6. Miscellaneous.

**6.1.** The parties understand and agree that this agreement shall be for the benefit of the parties hereto, as well as for the benefit of RadGuard, Inc. and Meridian Research and Development, Inc., affiliates of RST. The parties further agree that this agreement shall be for the benefit of the parties and their directors, officers, stockholders, owners, affiliates, and agents.

**6.2.** The parties agree that this agreement will be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

**6.3.** Every provision of this agreement is intended to be severable. If any term or provision hereof is illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the remainder of this agreement.

**6.4.** The term of this agreement shall be a period of two (2) years from the date of this agreement; provided that any Evaluation Material that constitutes a "trade secret" under the Florida Uniform Trade Secrets Act and/or is identified by RST in writing to Company as such, shall be kept confidential as long as required under such Act.

**6.5.** The parties agree that money damages would not be a sufficient remedy for any violation of the terms of this agreement, and, accordingly, that the parties shall be entitled to seek equitable relief, including injunctive relief and specific performance in the event of any breach of the provisions of the agreement, in addition to all other remedies available at law or in equity.

**6.6.** It is understood and agreed that no failure or delay in exercising any right, power or privilege hereunder will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.

**7.** **Governing Law; Arbitration; Choice of Venue; Consent to Jurisdiction.**

**7.1.** This Agreement and the performance hereunder shall be governed by and construed in accordance with the substantive laws of the State of Florida, without reference to conflicts of laws principles.

**7.2.** Any and all disputes arising in connection with this Agreement, or in connection with any other agreement or transaction, whether written or oral, including distributor agreements, purchase order, invoices, and any other contracts, between the parties to this Agreement, including without limitation any difference or despite regarding the interpretation of this Agreement or any other agreement between the parties hereto, whether or not such other agreement is related or ancillary to this Agreement, or any relationship of the parties hereto, whether or not related to the subject matter of this Agreement, shall be fully and finally settled through arbitration under the rules of the American Arbitration Association, by one arbitrator appointed in accordance with said rules. The situs of the arbitration shall be Miami, Florida, United States of America. Arbitration proceedings shall be conducted in English. All costs of the arbitration shall be the sole responsibility of each party, including without limitation attorneys' fees, costs and witness expenses. Once the arbitration hearing is commenced, it shall remain in session during the normal business hours for each following business day (weekends and United States holidays excepted), until concluded. The arbitrator shall issue an award along with a written opinion within thirty (30) days of the conclusion of the arbitration hearing. The parties agree that the arbitration, the award and its terms, and the arbitrator's written opinion shall be confidential.

**7.3.** The award and any order of the arbitrator shall be final and binding on all parties to such arbitration, and judgment thereon may be entered in any court having jurisdiction thereof.

**7.4.** Each party consents to the personal and subject matter jurisdiction of the arbitration proceedings, as provided herein, and waives any defense based upon forum nonconveniens or lack of personal or subject matter jurisdiction.

**7.5.** Each party acknowledges, agrees and represents that the provisions contained with respect to governing law, arbitration, choice of venue and jurisdiction, as well as the remaining provisions of this Agreement, have been negotiated and entered into voluntarily after consultation by each party with its legal counsel and with a full understanding of the business and legal consequences of such provisions and this Agreement.

**IN WITNESS WHEREOF,** the parties have executed this agreement as of the date first above written.

| **NATS Incorporated** | **Radiation Shield Technologies, Inc.** |
|---|---|
| By: Dr. Awateef Gacem | By: Ronald F. DeMeo, M.D. |
| Title: President | Title: CEO and President |
| Date: December 2, 2019 | Date: December 2, 2019 |