```
                        UNITED STATES DISTRICT COURT
                          DISTRICT OF CONNECTICUT

-------------------------------- x
                                 :
NATS, INC.,                      :
                                 :
                                 :  Civil No. 3:21-CV-430
        Plaintiff,               :
                                 :
v.                               :
                                 :
RADIATION SHIELD TECHNOLOGIES,   :
INC., DANIEL EDWARD, and RONALD  :
DEMEO.                           :
                                 :
        Defendants.              :
-------------------------------- x
```

**MEMORANDUM OF DECISION**

Plaintiff NATS, Inc. ("NATS") filed a complaint bringing claims for breach of contract, piercing the corporate veil, and violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq.. The defendants, Radiation Shield Technologies, Inc. ("RST"), Daniel Edward ("Edward"), and Ronald Demeo ("Demeo"), moved to compel arbitration of the plaintiff's claims. The court determined that it was necessary to hold a trial on the issue of whether the parties ever entered into an agreement to arbitrate. See Almacenes Fernandez, S.A. v. Golodetz, 148 F.2d 625, 628 (2d Cir. 1945). Having done so, the court finds that there is a valid and binding agreement to arbitrate.

**I. Background**

NATS is a business located in Middletown, Connecticut that facilitates the export of equipment manufactured in the United States. It specializes in distributing advanced technological innovations in radiation detection and analysis systems. Syed R. Maswood ("Maswood") is a founder of NATS. Maysoon R. Hasan ("Hasan") is its Area Manager. Dr. Awatef Gacem ("Gacem") is also a founder of NATS, as well as the President of NATS. In recent years Gacem has not been involved in the day-to-day operations but she signs documents when Maswood is away.

One of NATS's customers is a company in Saudi Arabia named Tech Flow Co. ("Tech Flow"). Tech Flow is a distributor of products in the Saudi Arabian market. The person from Tech Flow involved in this matter has the email address "naji@techflow.com.sa." Sometimes the name associated with that address was "Naji Osman" and sometimes it was "Naji Al-Fanjery." For purposes of consistency the court refers to the recipient of the emails as Naji from Tech Flow.

RST is a Delaware corporation headquartered in Florida. Defendant Demeo is its President and defendant Edward is RST's Director of Sales and Business Development.

In December 2018 Tech Flow contacted RST to start making arrangements for the delivery of 1,500 hazmat suits to Saudi Arabia for use by a government agency there. In November of 2019

NATS received a request from Tech Flow to take over the transaction it was attempting to enter into with RST for the purchase of the 1,500 hazmat suits. On November 11, Maswood from NATS contacted Edward from RST to let him know that NATS had become involved.

On November 18, 2019 Edward sent a quote to Hasan and Maswood at NATS. The subject line of the email made reference to an "Invoice" and the form attached was labeled as an "Invoice", but the document stated: "Quote is valid for 30 days." (ECF No. 27-1) at 2, 3. On November 20, Hasan sent a purchase order to Edward. He wrote: "Attached is NATS PO # SA-909103 regarding the 1500 suits for Tech Flow/Saudi Arabia[.] Look forward to receiving your invoice and the acknowledgment." (ECF No. 27-2) at 2. Thus, this email confirms that the document sent on November 18 was a quote, not an invoice.

Then, during the period from November 20 to November 27 there was a series of email exchanges in which RST and NATS negotiated payment terms. On November 27 at 2:36 PM, Hasan wrote to Edward: "Pursu[ant] to your agreement below, I attached Rev B of NATS PO # SA-909103. please send us your company invoice to remit payment. . . . Please expedite the order." (ECF No. 27-3) at 2.

Three minutes later, i.e. on November 27 at 2:39 PM, Edward wrote to Hasan and mentioned, for the first time, that RST

required a nondisclosure agreement. Edward wrote to Hasan, copying Maswood at NATS and Naji from Tech Flow: "I will do! We need an NDA in place with NATS and Tech Flow. Who will be the person signing for each company and their title?" (ECF No. 27-4) at 3. Maswood responded on December 2 at 9:26 AM: "Please address the NDA to NATS Inc. Person to sign is Dr. Awatef Gacem, President." (ECF No. 51-3) at 5.

On December 3, 2019 Edward wrote to Hasan, copying Maswood and Naji from Tech Flow: "Here is our NDA and DA, soon as I receive it back I'll issue the invoice!" (ECF No. 27-4) at 2. Two documents were attached to the email. One was a "Non-Exclusive Distributor Agreement" (the "Distributor Agreement"). (ECF No. 27-4) at 18. The other was a "Mutual Confidentiality and Nondisclosure Agreement" (the "Original NDA"). (ECF No. 27-4) at 40.

NATS found the two documents problematic. So on December 6, 2019 at 1:14 PM Edward wrote to Hasan, copying Naji from Tech Flow and Maswood: "Hi All, I spoke to Naji, we can worry about the DA and any changes NATS wants to make at a later date. What I really need is the NDA (confidentiality agreement) and I can move forward." (ECF No. 27-7) at 7. A couple of hours later, Hasan responded: "We only will sign the NDA. Our Legal Counsel and Management refused the Distributor Agreement in its current form. We can redline the parts we object to on Monday." (ECF No.

27-7) at 7. The next day, Edward responded to Hasan: "That's fine. The NDA is what I need and your legal can let us know the changes you would like." (ECF No. 27-7) at 6. Edward then followed up the next day asking: "Will you send me the signed NDA Monday?" (ECF No. 27-7) at 6. On Monday December 9 Hasan responded to Edward stating: "The NDA was more or less acceptable," and asking for clarification concerning one paragraph. (ECF No. 27-7) at 5. Also, Hasan explained that Maswood was still reviewing notes from counsel.

Then on December 11, 2019 at 9:32 AM Hasan sent the Original NDA, signed by NATS only, to Edward with the following message, copying Naji from Tech Flow, Maswood and Gacem:

> Please find attached our executed NDA. We have been advised by Counsel that section 5 sub part 5.1 -5.4 of your NDA ( which we signed in good faith) mandates a "Definitive Agreement" on our transaction. Please send us a word version of what you sent earlier so we can edit and amend as the one sent was not acceptable earlier. No Definitive agreement exist[s] as of now that has been signed and agreed.

(ECF No. 27-7) at 2 (second emphasis added).

On December 11, 2019 at 10:05 AM Edward wrote to Hasan stating: "I believe our legal found the NDA we already have in place with NATS . . . ." Exs. in Supp. of Briefing for Hr'g Set for October 18, 2021 ("Exhibits 10/18/21"), Ex. 8 at 11. Edward indicated that a new NDA might not be necessary. But no NDA that was already in place ever surfaced.

On December 12 at 9:37 AM Hasan wrote to Edward: "The revised NDA that you sent and we signed as you sent indicated NO AGREEMENT VALID without a second document. We repeat . . . ." (ECF No. 27-9) at 5. Edward responded shortly thereafter, at 10:31 AM. He stated: "Sorry we still are unclear on our end." (ECF No. 27-9) at 4. He suggested that NATS have its attorney make revisions to the nondisclosure agreement, ("So please phrase section 5 to where NATS is comfortable"), and stated that RST's attorney "is available today to review and approve if changes are acceptable." Id.

There followed an email from Hasan to Edward and then one from Edward to Hasan in reply, which reflected that they did not have a mutual understanding as to how to proceed. Then, at 11:32 AM, in response to a question from Edward, Hasan wrote to Edward stating:

> Please read our email we sent with signed NDA (attached again). As per your terms the NDA is incomplete and does not constitute any legal agreement UNLESS it is accompanied by a second agreement signed (which we assume is your Distributer agreement). That is what you are stating and we signed waiting for your second document.

(ECF No. 27-9) at 2.

Shortly thereafter, Naji from Tech Flow wrote to Edward, following up on a call he had just had with Edward. On December 12 at 12 PM Naji wrote to Edward: "I [j]ust called you and told you we will only work with NATS and asked you to amend the NDA

and send, now you sending this email instead of amended NDA." Exhibits 10/18/21, Ex. 6 at 1.

Edward reached out to RST's attorney for assistance in revising the NDA, and the attorney prepared a revised version of the NDA (the "Revised NDA").

During a series of Whats App Messages between the two of them, Edward arranged with Naji from Tech Flow to send the Revised NDA to Naji so Naji could arrange to get it executed by NATS.

Then on December 12 at 12:28 PM Edward wrote to Hasan, copying Naji from Tech Flow, Maswood, and Gacem, stating: "I'm waiting to hear [if] section 5 can be removed from the NDA, if so I'll have that done and resent." Exhibits 10/18/21, Ex. 8 at 4. A few hours later, at 3:09 PM, Edward emailed Maswood, Hasan, and someone at Trilogy Systems, copying Naji from Tech Flow and Gacem, stating: "I will be forwarding our revised NDA within the hour with the changes requested and emailed Naji directly regarding our condition moving forward. The NDA and how we move forward are not negotiable." Id. at 2. Then at 3:37 PM Edward emailed Maswood, Hasan, and someone at Trilogy Systems, copying Naji from Tech Flow and Gacem, stating:

> I believe you may not have seen my email yet sent at 1pm as per Naji's request we will get the revised NDA today and will not work with Michael or Trilogy and only NATS on this project. I just received the revised and signed NDA and have sent to Naji.

-7-

Id. at 1. The reference to the NDA being signed was a reference to the NDA being signed on behalf of RST.

The Revised NDA deleted former sections 5.1, 5.2, and 5.3 of the Original NDA, which had caused concerns on the part of NATS because of the reference to a "Definitive Agreement." Section 5.4 in the Original NDA was renumbered to be 5.1.

In addition, a significant change was made in Section 7.2. In the Original NDA the first sentence of Section 7.2 read as follows:

> All disputes arising in connection with this Agreement, or in connection with any other agreement or transaction between the parties to this Agreement, including without limitation any difference or despite regarding the interpretation of this Agreement or any other agreement between the parties hereto, whether or not such other agreement is related or ancillary to this Agreement, or any relationship of the parties hereto, whether or not related to the subject matter of this Agreement, shall be fully and finally settled through arbitration under the rules of the American Arbitration Association, by one arbitrator appointed in accordance with said rules.

(ECF No. 27-9) at 51. In the Revised NDA, the first sentence of Section 7.2 reads:

> <u>Any and</u> all disputes arising in connection with this Agreement, or in connection with any other agreement or transaction, <u>whether written or oral, including distributor agreements, purchase order, invoices, and any other contracts,</u> between the parties to this Agreement, including without limitation any difference or despite regarding the interoperation of this Agreement or any other agreement between the parties hereto, whether or not such other agreement is related or ancillary to this Agreement, or any relationship of the parties hereto, whether or not related to the

    subject matter of this Agreement, shall be fully and
    finally settled through arbitration under the rules of
    the American Arbitration Association, by one
    arbitrator appointed in accordance with said rules.

(ECF No. 27-10) at 8 (emphasis added).

  On Thursday December 12, 2019 at 3:41 PM Edward sent the Revised NDA to Naji from Tech Flow requesting "Please have them initial every page and sign the last page. Thank you Naji!" (ECF No. 53-1) at 31. No one from NATS was copied on this email.

  Naji from Tech Flow forwarded the Revised NDA to NATS for signature. When Edward sent the Revised NDA to Naji, he had not told Tech Flow what changes had been made in preparing the Revised NDA. Thus, Naji from Tech Flow did not tell NATS what changes had been made in preparing the Revised NDA when he sent that document to NATS. Also, Edward's 12:28 PM email had only made reference to Section 5.

  When Naji from Tech Flow forwarded the document to NATS, the Revised NDA had already been signed by Demeo in his capacity as CEO and President of RST. Gacem then executed the Revised NDA in her capacity as President of NATS, initialing every page, as requested by Edward.

  On December 14, 2019 at 3:17 AM Maswood forwarded the fully executed Revised NDA to Naji from Tech Flow. He included Hasan and Gacem in the email, but he did not include anyone from RST.

Then on Monday, December 16, 2019 at 11:29 AM Naji from Tech Flow forwarded the fully executed Revised NDA to Edward at RST. Gacem, Hasan and Maswood from NATS were all copied on the email message. In that message, Naji from Tech Flow stated: "Dear Dan, Attached herewith signed NDA from NATS, please send your invoice ASAP to NATS." (ECF No. 53-1) at 40.

Shortly thereafter, at 11:58 AM, Edward wrote to Naji from Tech Flow, with a copy to Gacem, Hasan and Maswood at NATS, stating: "Received and invoice sent along with our wire instructions."  Exhibits 10/18/21, Ex. 12 at 1. On December 18 at 11:10 AM Hasan wrote to Edward, with a copy to Maswood and Naji from Tech Flow, pointing out an error in the invoice and asking for a corrected invoice. At 11:18 AM Edward wrote to Maswood, with a copy to Gacem and Hasan at NATS and Naji from Tech Flow: "Here is corrected invoice per your request." Exhibits 10/18/21, Ex. 13 at 1.

From there, the parties moved forward with the transaction.

**II. Discussion**

The Original NDA never became effective. It was executed on behalf of NATS by Gacem and sent to RST by Hasan on December 11, 2019 as a sign of good faith. The December 11, 2019 email makes it clear that the Original NDA would not take effect until a "Definative Agreement" had also been executed. This point was repeated on December 12 in emails from Hasan to Edward.

-10-

The Revised NDA was executed on behalf of RST by Demeo and then forwarded to Naji from Tech Flow, who then forwarded it to NATS for signature. Gacem executed the Revised NDA in her capacity as President of NATS, initialing every page, as requested by Edward. Then on December 14, Maswood emailed the fully executed Revised NDA to Naji from Tech Flow. He did not include RST in the email. But he did not covey to Naji from Tech Flow that the Revised NDA was being given to him for some limited purpose, or that it was not to take effect until some subsequent event had occurred, or that it was not yet effective, which had been done when Hasan sent the Original NDA to Edward at RST.

When Naji from Tech Flow sent the Revised NDA to RST, he did not state anything to suggest that even though he was conveying a fully executed agreement it would not take effect until the occurrence of some subsequent event.

Gacem, the President of NATS, testified that she never read the Revised NDA, and no one from NATS ever asked what sections had been modified in preparing the Revised NDA notwithstanding the fact that NATS and RST had gone back and forth with respect to which side would make the revisions. As explained in Ursini v. Goldman:

> The general rule is that where a person of mature years, and who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is

> his duty to read it, and notice of its contents will be imputed to him if he negligently fails to do so; but this rule is subject to qualifications, including intervention of fraud or artifice, or mistake not due to negligence, and applies only if nothing has been said or done to mislead the person sought to be charged or to put a man of reasonable business prudence off his guard in the matter.

118 Conn. 554 (1934). Here, NATS cites to D'Antuono v. Service Road Corp., 789 F. Supp. 2d 308, 323 (D. Conn. 2011), for the proposition that "[t]here is an exception to that general rule when something has 'been said or done to mislead the person . . . or to put a [person] of reasonable business prudence off his [or her] guard in the matter.'" (ellipsis and second and third alteration in the original) (quoting Id. at 562).

NATS contends that it was mislead or put off guard by virtue of the fact that Naji from Tech Flow acted as an undisclosed agent for RST, and also contends that it never authorized him to deliver the fully executed Revised NDA to RST. However, even accepting both of those propositions as true, they are not material to the outcome of this case because of what NATS did not do and what it did after it knew that the Revised NDA had been delivered to RST.

"[I]n order to form a contract, generally there must be a bargain in which there is a manifestation of mutual assent to the exchange between two or more parties; see Restatement (Second), Contracts, ss 1(c), 15, 19 (Tent. Dr. 1964); 1 Williston, Contracts, ss 18, 22 (1957) . . . ." Ubysz v.

DiPietro, 185 Conn. 47, 51 (1981). "'The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act.' Restatement (Second), Contracts, s 21(1) (Tent. Dr. 1964). See 1 Corbin, Contracts, s 18 (1963); 1 Williston, Contracts, s 22A (1957)." Id. See also Schnabel v. Trilegiant Corp., 697 F.3d 110, 120 (2d Cir. 2012) ("The conduct manifesting such assent may be words or silence, action or inaction, but '[t]he conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.'") (alteration in original) (quoting Restatement(Second)of Contracts § 19(2)).

   Here, when Naji from Tech Flow forwarded the fully executed Revised NDA to RST, NATS was immediately aware the fact he had done so. Gacem, Hasan, and Maswood were all copied on that email message and that message made it clear he was sending RST the signed Revised NDA from NATS and doing so without conditions attached. No one from NATS responded to that message expressing concern that the fully executed Revised NDA had been sent to RST or stating that it would not take effect until the occurrence of some subsequent event. Cf. Ace Equipment Sales, Inc. v. H.O. Penn Machinery Co., Inc., 88 Conn.App. 687, 697 (2005) ("[T]he person claiming duress must act promptly to repudiate the

-13-

contract . . . or he will be deemed to have waived his right to do so . . . . If [that] party does not promptly repudiate the contract . . . he will be deemed to have ratified it.") (internal quotation marks and citations omitted).

Also, Naji from Tech Flow's email asked Edward to send an invoice to NATS as soon as possible, which Edward did. No one from NATS responded to receiving the invoice by saying or doing anything to suggest to RST that the Revised NDA was not in full force and effect. Instead, Hasan wrote to Edward pointing out an error in the invoice and asking for a corrected invoice. NATS remained silent on the question of whether the Revised NDA was in full force and effect notwithstanding the fact that Edward had repeatedly informed NATS that RST required a nondisclosure agreement and that RST would not issue the invoice until one was in place. Edward had made it clear that that requirement was nonnegotiable. Moreover, NATS then proceeded with the transaction, never conveying to RST that NATS did not believe that the Revised NDA was in full force and effect.

This conduct on the part of NATS manifested assent by NATS to the Revised NDA. NATS knew, or at a minimum had reason to know, that RST had concluded, based on conduct of the individuals at NATS, that NATS assented to the Revised NDA.

"Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its

terms." John M. Glover Agency v. RDB Bldg., LLC, 60 Conn.App. 640, 644 (2000) (quoting HLO Land Ownership Associates Ltd. Partnership v. Hartford, 248 Conn. 350, 356-57 (1999)). Section 7.2 of the Revised NDA makes it clear that "[a]ny and all disputes" between NATS and RST "shall be fully and finally settled through arbitration under the rules of the American Arbitration Association . . . ." (ECF No. 27-10) at 8.

Based on the forgoing, the court concludes that the parties entered into a valid and binding agreement to arbitrate, namely the Revised NDA, which covers the plaintiff's claims in this case.

**III. Conclusion**

Accordingly, the court will grant the defendants' motion to compel arbitration.

It is so ordered.

Dated this 19th day of December 2023, at Hartford, Connecticut.

/s/
Alvin W. Thompson
United States District Judge